FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 27 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
BLIMA KRAUS, On Behalf of Herself and
All Other Similarly Situated Consumers,

                Plaintiff,

- against –

PROFESSIONAL BUREAU OF
COLLECTIONS OF MARYLAND, INC.,

                Defendant.
------------------------------------------------------x

MEMORANDUM AND ORDER
17-CV-3402

GLASSER, Senior United States District Judge:

    Plaintiff Blima Kraus ("Kraus") brings this putative class action against Professional Bureau of Collections of Maryland, Inc. ("PBCM"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Before the Court is PBCM's motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

    Kraus's claim is essentially as follows: She alleges that PBCM's June 6, 2016 letter to her (the "Letter"), which transmitted an offer to settle her debt for 40% of her account balance, violated 15 U.S.C. § 1692e because it listed her account balance but did not indicate that the account balance might increase due to interest or other charges. Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. §§ 1692e, 1692e(2)(A). In *Avila v. Riexinger & Associates, LLC*, the Second Circuit held that a debt collector violates § 1692e if it notifies a consumer of his or her account balance but fails to disclose that the consumer's balance may increase due to interest and fees. *See* 817 F.3d 72, 76-77 (2d Cir. 2016). But *Avila* also provides a safe harbor for a debt collector who "fail[s] to disclose that the consumer's balance may increase due to interest and fees" but

1

nonetheless "clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date." *Id.* at 77. The questions facing the Court are whether *Avila* applies to the Letter and, if so, whether the settlement offer in the Letter brings PBCM within the safe harbor.

Because the Court concludes that, though *Avila* applies, the Letter falls within the safe harbor, the Court grants PBCM's motion and dismisses the complaint. The Letter clearly communicated that PBCM would accept payment of the settlement amount—40% of the account balance, or $1,552.45—in full satisfaction of Kraus's debt if the payment was received by June 20, 2016; this brings PBCM within the safe harbor. Significantly, Kraus alleges no confusion as to the terms of the settlement offer, transmittal of which was the purpose of the Letter. Kraus does not allege—nor plausibly could she—that she was (or that the hypothetical "least sophisticated consumer" would have been) misled as to (i) whether payment of the 40% settlement offer would fully satisfy the debt, (ii) the precise amount of the settlement offer, or (iii) the date by which the payment would need to be received by PBCM to satisfy the debt. To hold PBCM liable in these circumstances would be to reward a creative yet ostensibly unharmed plaintiff at the expense of a non-abusive debt collector that, by making a discounted settlement offer, was acting in consumers' best interests. The law does not demand such an absurd result.

## BACKGROUND[1]

Defendant PBCM is in the business of collecting debts owed to others. ECF 1 ("Compl."), ¶¶ 5-6. Plaintiff Kraus is a resident of New York who allegedly incurred a consumer debt, which alleged debt PBCM then sought to collect. *Id.* ¶¶ 2-3, 9. On or about April 11, 2016, PBCM sent

---

[1] With one exception, specified below, the alleged facts in this section are drawn from the complaint and the exhibit attached thereto.

to Kraus a letter (the "Validation Notice") that, among other things, (i) stated that her debt to Comenity Bank had been assigned to PBCM; (ii) notified her of the account balance; and (iii) provided other information required by 15 U.S.C. § 1692g(a), including a statement that the debt's validity would be assumed unless disputed by the consumer within thirty days and an offer to obtain verification of the debt if it were to be disputed. *See* ECF 9-1, Ex. A.[2]

On or about June 6, 2016, PBCM sent to Kraus the Letter, which reads, in relevant part, as follows:

> Your account has been assigned to Professional Bureau of Collections of Maryland, Inc.
>
> ### 40% SETTLEMENT OFFER
>
> We have been authorized by our client Comenity Bank to offer you an opportunity to pay less than the amount due. This settlement as offered shall be in the amount of 40% of the balance.
>
> This settlement offer will expire unless we receive your payment of $1,552.45 due in our office on or before 6/20/2016.
>
> . . . .
>
> **This notice is sent by a professional debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Compl. ¶ 10 & Ex. 1.

---

[2] The Court may consider the Validation Notice in deciding this Rule 12(b)(6) motion, even though Kraus did not attach it to the complaint or expressly incorporate it by reference, because the Validation Notice is a "document[] possessed by or known to [Kraus] and upon which [Kraus] relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Validation Notice was sent to Kraus, and Kraus's counsel acknowledged at oral argument that he had seen a copy of it. ECF 15 ("Tr.") at 8:23-25. Moreover, as discussed below, Kraus clearly relied on the Validation Notice for the allegations in paragraphs 57 through 64 and paragraph 77 of the complaint. In deciding the motion, the Court considered the Validation Notice solely in connection with the allegations in those paragraphs.

The Letter identifies Kraus's "Account Balance" as $3,881.13. *Id.*, Ex. 1. The Letter does not indicate what portion of this account balance was the original principal or what portion, if any, was attributable to interest or other charges, nor does it indicate whether the account balance might increase due to interest and fees. *See id.* Kraus alleges that she was unsure whether the account balance was accruing interest or whether it would accrue interest or other charges going forward. *Id.* ¶¶ 16, 19, 21. She further alleges that the account balance in fact *was* accruing interest daily and, moreover, that the account balance listed in the letter included the original principal, fees, and contractual interest. *Id.* ¶¶ 15, 18, 26.

Kraus filed this action on June 6, 2017. ECF 1. She purports to bring the action on behalf of two classes: (i) Class A, consisting of New York residents who received collection letters in the same form as the Letter; and (ii) Class B, consisting of New York residents who suffered a series of other FDCPA violations allegedly committed by PBCM (which series of alleged violations is ungrammatically and, consequently, confusingly enumerated in paragraph 77 of the complaint). *Id.* ¶¶ 76-77.

On July 7, 2017, PBCM moved the Court to dismiss the complaint under Rule 12(b)(6). ECF 9. Kraus did not timely file an opposition brief. The Court heard oral argument on September 15, 2017. *See* ECF 15.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion, the Court must accept the non-moving party's factual allegations as true and draws all reasonable inferences in its favor. *ATSI Commc'ns*, 493 F.3d at 98. But the Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

## DISCUSSION

### I. The Fair Debt Collection Practices Act

The FDCPA was enacted in response to a "serious national problem" of debt collection abuse. S. Rep. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. The enacted purpose of the statute was "to eliminate abusive debt collection practices," while simultaneously ensuring that non-abusive debt collectors "are not competitively disadvantaged." 15 U.S.C. § 1692(e). Section 1692e "establishes a general prohibition against the use of 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1994) (quoting 15 U.S.C. § 1692e). The section also includes a "non-exhaustive list of practices that fall within this general ban," *id.*, among which are the following:

> (2) The false representation of—
>
> (A) the character, amount, or legal status of any debt;
>
> . . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e(2)(A), (10). "Because the list in the sixteen subsections is non-exhaustive, a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e

5

even if it does not fall within any of the subsections of § 1692e." *Clomon*, 988 F.2d at 1318. Section 1692g provides that a debt collector, within five days of its initial communication with a consumer in connection with the collection of a debt, "must provide the consumer with a detailed validation notice," which validation notice "must include the amount of the debt, the name of the creditor, a statement that the debt's validity will be assumed unless disputed by the consumer within 30 days, and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (citing 15 U.S.C. § 1692g(a)).

In analyzing whether a communication runs afoul of the FDCPA, courts apply an objective "least sophisticated consumer" standard. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005). Under this standard, a defendant's communication is viewed "from the perspective of a debtor who is uninformed, naive, or trusting, but is making basic, reasonable and logical deductions and inferences." *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007). "It should be emphasized that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness." *Clomon*, 988 F.2d at 1319. The standard thus "seeks to protect the naive from abusive practices while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." *Greco*, 412 F.3d at 363.

## II. Plaintiff's Claims

To recover under the FDCPA, a plaintiff must satisfy three threshold requirements: (1) the plaintiff must be a "consumer," (2) the defendant must be a "debt collector," and (3) the defendant must have committed some act or omission in violation of the FDCPA. *Oscar v. Prof'l Claims Bureau, Inc.*, No. CV11-5319 SJF WDW, 2012 WL 2367128, at *3 (E.D.N.Y. June 1, 2012),

*report and recommendation adopted*, No. CV-11-5319 SJF WDW, 2012 WL 2367136 (E.D.N.Y. June 19, 2012).

PBCM does not dispute satisfaction of the first two requirements. As to the third—violation of the FDCPA—Kraus alleges that, under *Avila*, the Letter violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10) because it did not indicate whether the listed account balance might increase due to interest and fees. *See* Compl. ¶¶ 9-56, 76. Kraus's complaint includes additional allegations detailing purported violations of 15 U.S.C. §§ 1692g, 1692e, and 1692e(10), *see id.* ¶¶ 57-64, 77, but their inclusion in the complaint appears to be a drafting error or else a ham-fisted attempt to bring claims barred by the statute of limitations. The Court addresses these allegations in turn below.

### A. Kraus's § 1692e *Avila* Claim

In *Avila*, the Second Circuit resolved a split among the district courts over "whether a collection notice that states a consumer's 'current balance,' but does not disclose that the balance may increase due to interest and fees, complies with [15 U.S.C. § 1692e]." *Avila*, 817 F.3d at 74. The court answered in the negative, holding "that the FDCPA requires debt collectors, when they notify customers of their account balance, to disclose that the balance may increase due to interest and fees." *Id.* at 76. As the court explained, it reached this conclusion "guided by two principles of statutory construction": First, "because the FDCPA is primarily a consumer protection statute," it must be construed liberally "[to achieve] the underlying Congressional purpose." *Id.* at 75 (citations and quotation marks omitted). Second, to determine whether a collection notice violates the FDCPA, courts must apply the "least sophisticated consumer" standard, according to which "a collection notice can be misleading if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Id.* (quoting *Clomon*, 988 F.2d at 1319). Applying these two principles, the court held that the collection notice at issue in *Avila* was misleading, in violation of

§ 1692e, because a consumer could have read the notice—which stated a "current balance" but did not disclose that the balance was accruing interest at a rate of 500% per year—and concluded, reasonably but mistakenly, that she could pay her debt in full by timely paying only the amount listed as the current balance. *See id.* at 76.

Concerned with minimizing FDCPA litigation, however, the *Avila* court also explicitly established a safe harbor for debt collectors:

> We hold that a debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice either accurately informs the consumer that the amount of the debt stated in the letter will increase over time, *or clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date.*

*Id.* at 77 (emphasis added). The court expressly declined to "hold that a debt collector must use any particular disclaimer." *Id.*

Here, the Letter unquestionably stated Kraus's account balance yet did not disclose that the balance might increase due to interest and fees. *See* Compl., Ex. 1. Kraus alleges that she was unsure, based on the Letter, whether the account balance was accruing interest or whether it would accrue interest or other charges going forward. *See id.* ¶¶ 16, 19, 21. According to Kraus, the account balance in fact *was* increasing daily due to interest, per the creditor's contract.[3] *Id.* ¶¶ 15,

---

[3] The Court accepts this allegation as true, as it must in deciding this motion. Nonetheless, the Court feels the need to provide plaintiff's counsel with a cautionary reminder of his obligation, under Rule 11, to make a reasonable inquiry to determine that the factual contentions in a complaint have evidentiary support (or, for contentions specifically so identified, that they will likely have such support after a reasonable opportunity for further investigation or discovery). *See* Fed. R. Civ. P. 11(b)(3). The complaint alleges that Kraus's account balance was "increasing due to interest per the creditor's contract," but during oral argument, plaintiff's counsel would not represent that he had a copy of the relevant contract or that he had seen it. *See* Tr. at 7:4-8:7. Instead, he asked the Court to take judicial notice of the alleged fact that interest was accruing because the debt was from a credit card; his argued rationale was, essentially, that everyone knows interest accrues on credit card debt. *See id.* at 7:24-8:7 ("I think that the Court can take judicial notice of that as the way society goes with all of the news reports and all of the consumer litigation and all of the litigation against banks concerning—concerning credit cards."). This argument sits uncomfortably

22, 26. On these grounds, Kraus alleges that, under *Avila*, the Letter violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10). *See id.* ¶ 56. In response, and in support of its motion to dismiss, PBCM argues primarily that the Letter was a settlement offer and that settlement offers may not form the basis for FDCPA liability. *See* ECF 9-2 at 4. Moreover, according to PBCM, "even the least sophisticated consumer can be expected to read the entirety of a letter from a debt collector, presumably understanding that a letter marked '[4]0% SETTLEMENT OFFER' is just that, a settlement offer." *Id.* at 5. PBCM does not address *Avila* beyond the conclusory assertion that "none of the case law that Plaintiff cites to in the Complaint applies to settlement offers." *Id.* at 1.

### 1. Section 1692e Applies to the Letter

As a preliminary matter, § 1692e does apply to settlement offers, provided the settlement offers are sent "in connection with the collection of a[] debt." 15 U.S.C. § 1692e; *see also Avila*, 817 F.3d at 76 ("[Section 1692e] always applies in connection with the collection of any debt by a debt collector."). None of the cases cited by PBCM are to the contrary. Rather, the cases cited by PBCM stand for the less radical proposition that, in evaluating FDCPA claims, some courts have been hesitant to impose liability in a manner likely to restrict settlement opportunities. *See, e.g., Sarder v. Academy Collection Serv., Inc.*, No. CV 02-2486, 2005 WL 615831, at *3 (E.D.N.Y. Mar. 3, 2005) (declining to hold "that a settlement offer which expires on a date certain becomes

---

next to the complaint itself, in which Kraus alleges that she was unsure whether her account was accruing interest. More importantly, as the Court noted during oral argument, the Validation Notice and the Letter, sent two months apart, list the same exact account balance, a fact seemingly at odds with the allegation that Kraus's account balance was accruing interest daily. *Compare* Compl., Ex. 1 (the Letter, dated June 6, 2016, listing an account balance of $3,881.13), *with* ECF 9-1, Ex. A (the Validation Notice, dated April 11, 2016, listing the same account balance). Plaintiff's counsel insisted at oral argument that "the least sophisticated consumer is [not] charged with comparing various letters received over a period of time," Tr. at 10:9-12, but he misses the point: *Counsel* should have compared the letters, as part of the reasonable inquiry required by Rule 11, before filing a complaint alleging as fact that Kraus's account balance was increasing due to the daily accrual of interest.

deceptive when an agency later offers a lower settlement amount upon expiration of the first offer," in part because "[s]uch a holding would necessarily deter agencies from ever offering a lower settlement amount, and thus eliminate settlement possibilities"). While the Court is cognizant of this policy consideration, it does not entirely shield settlement offers from FDCPA liability. The statutory language is clear: A communication is covered by § 1692e if it was sent "in connection with the collection of a[] debt." 15 U.S.C. § 1692e. A settlement offer so sent is thus covered by § 1692e.

Here, the Letter was sent "in connection with the collection of a[] debt." The Second Circuit has held that "an *attempt* to collect a debt . . . qualifies as a communication 'in connection with the collection of a[] debt.'" *Hart* v. *FCI Lender Servs., Inc.*, 797 F.3d 219, 226 (2d Cir. 2015). Plainly, an offer to settle a debt for a portion of the amount owed—one that solicits payment of the offered settlement amount—is an attempt to collect on a debt. The Letter also bears additional hallmarks of a communication sent in connection with the collection of a debt, to wit the Letter (i) "directed the recipient to mail payment[] to a specified address" and (ii) "'emphatically announce[d] itself as an attempt at debt collection: [**This is an attempt to collect a debt and any information obtained will be used for that purpose.**]'" *Carlin* v. *Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017) (quoting *Hart*, 797 F.3d at 226) (second alteration in original).

Accordingly, § 1692e applies to the Letter, and so too does the *Avila* holding. And undoubtedly, the Letter does state Kraus's account balance without disclosing that the balance might increase due to interest and fees. *See* Compl., Ex. 1. Therefore, under *Avila*, the Letter violated § 1692e unless PBCM qualifies for the safe harbor.

### 2. PBCM Qualifies for the Safe Harbor

On its face, the Letter falls within the *Avila* safe harbor because it "clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if

payment is made by a specific date." *Avila*, 817 F.3d at 77. Specifically, the Letter clearly relays that Kraus could satisfy her debt to Comenity Bank, the holder of the debt, by sending a payment of $1,552.45 to PBCM by June 20, 2016.[4] *See* Compl., Ex. 1. Thus squarely within the safe harbor, PBCM is shielded from § 1692e liability for the Letter. Kraus disputes this conclusion, but for the reasons outlined below, the Court finds her arguments unconvincing.

In the complaint, Kraus alleges that the Letter does not qualify for the safe harbor. Compl. ¶ 17. Kraus's support for that assertion, however, consists entirely of repeated mischaracterizations of the *Avila* holding regarding the safe harbor. In particular, Kraus alleges numerous times that, in order for a debt collector to qualify for the safe harbor by indicating it will accept payment of a "specified amount" in full satisfaction of the debt, the debt collector must *always* accept that specified amount in full satisfaction of the debt. *See id.* ¶¶ 13-14, 29, 30, 33, 40, 50. But the *Avila* court indicated that a debt collector must simply make clear that it "will accept payment of the amount set forth in full satisfaction of the debt *if payment is made by a specified date.*"[5] *Avila*, 817 F.3d at 77 (emphasis added). If a debt collector may specify that payment of the specified amount must be "made by a specified date," then clearly it need not *always* accept the specified amount.

Again distorting *Avila*, Kraus also alleges that a debt collector willing to accept a specified amount in full satisfaction of the debt by a specified date "*must* simplify the consumer's

---

[4] The *Avila* court was not referring specifically to settlement offers, and presumably "the amount set forth" that the court had in mind in that case was the listed account balance. But there is no reason why a debt collector should not be able to offer an amount *lower* than the listed account balance—a discounted settlement offer—and still qualify for the safe harbor, provided the relevant amount and expiration date of the offer are clearly stated.

[5] In excerpting the *Avila* safe harbor language in her complaint, Kraus omitted the key phrase "if payment is made by a specified date"—without including an ellipsis to signal the omission. *See* Compl. ¶ 13. The Court does not look kindly on the misleading use of incomplete quotations.

11

understanding by so stating, while advising that the amount <u>could</u> increase by the accrual of additional interest or fees if payment is not received by that date." Compl. ¶ 14 (emphasis added). The *Avila* court, however, stated only that a debt collector in this position "*could* considerably simplify the consumer's understanding by so stating, while advising that the amount due would increase by the accrual of additional interest or fees if payment is not received by that date." *Avila*, 817 F.3d at 77 (emphasis added). Kraus would have the Court follow her in transmuting "could" into "must." But this argument-by-misquotation also conflicts with the logic of the safe harbor, which was presented as a disjunction: The safe harbor covers a debt collector who

> *either* [1] accurately informs the consumer that the amount of the debt stated in the letter will increase over time, *or* [2] clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date.

*Id.* (emphases and alterations added). Thus, contra Kraus, a debt collector who complies with the second prong of the safe harbor, specifying a date until which the debt collector will accept a sum certain in full satisfaction of the debt, need not also comply with prong one. This reading makes sense when we consider the harm that the *Avila* court was seeking to prevent, namely a consumer being "misled into believing that she could pay her debt in full by paying the amount listed on the notice" when in fact, by the time she paid that amount, her debt may have increased due to interest or undisclosed late fees. *Id.* at 76. A consumer is not so misled by a letter truthfully informing her that she can satisfy her debt in full by paying a specified amount by a specified date.

Stepping back from a Talmudic examination of *Avila*, we would do well to recall the purpose of the FDCPA and, in light of that statutory purpose, to consider just what the alleged harm is in this case. Hornbook tort law teaches that the violation of a statute will subject the violator to liability if the person harmed is a member of the class the statute was designed to protect and the harm complained of is the harm the statute was designed to prevent. Though this action

does not sound in tort, the principle precisely applies. As a consumer, Kraus is a member of the class the FDCPA was designed to protect. As to harm, however, the statute's enacted purpose was "to eliminate abusive debt collection practices," 15 U.S.C. § 1692(e)—abusive practices such as "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. 95-382, at 2 (1977). Was Kraus so abused? To ask this question is to answer it.

Kraus alleges that she was unsure whether her account balance, as listed in the Letter, was accruing interest or other fees and, moreover, that a reasonable consumer could have been misled into believing that she could pay her debt in full by paying the amount listed as the account balance. Compl. ¶¶ 16, 19-21. But she does not allege that the listed account balance overstated the amount of her debt.[6] Nor, more significantly, does she allege any confusion as to the terms of the settlement offer. The purpose and effect of the Letter were to communicate to Kraus an offer to settle her debt for a significantly discounted amount. Kraus does not allege—nor plausibly could she—that she was (or that the hypothetical "least sophisticated consumer" would have been) misled as to (i) whether payment of the 40% settlement offer would fully satisfy her debt, (ii) the precise amount of the settlement offer, or (iii) the date by which the payment would need to be received by PBCM to satisfy the debt. Where is the abuse here? The Court sees none. Discounted settlement offers such as the one communicated in the Letter are in consumers' best interest and

---

[6] One could imagine a case where, as part of a settlement offer, a debt collector misrepresented an account balance in an abusive manner. For example, it would be clearly abusive if a debt collector falsely overstated an account balance so as to make a settlement offer seem more attractive. But that is not the situation with which we are faced here.

should be encouraged, not punished for creatively imagined technical violations in the communication of additional information. *See Sarder*, No. CV 02-2486, 2005 WL 615831, at *3 ("Put simply, it would be unwise and against the consumers' best interests to restrict opportunities for settlement in such a manner."). "The FDCPA is intended to prevent debt collectors from trying to trap unsophisticated debtors; it is not intended to be a trap for debt collectors." *Dick v. Enhanced Recovery Co., LLC*, No. 15-cv-2631, 2016 WL 5678556, at *8 (E.D.N.Y. Sept. 28, 2016).

Given the innocuous nature of the Letter, the Court could not help but wonder: How did Kraus find herself in federal court? This question was posed to plaintiff's counsel during oral argument, and his answer is enlightening: "[F]inancial distress." Tr. at 17:3. According to plaintiff's counsel, Kraus sought him out because "she's in debt and she would like some guidance as to what she can do in terms of getting out." *Id.* at 18:2-4. In other words, according to her counsel, Kraus did not seek an attorney because she felt abused, deceived, or otherwise aggrieved; she did so because she wanted help getting out of debt.[7] The FDCPA is not a debt-relief statute, however, and courts should not indulge thinly veiled attempts to use it as one.

Sadly, abuse of the statute is unsurprising given the development of the law in this area, and the Court suspects such abuse is fairly widespread. In 2006, the Court observed that "[t]he interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has led to a proliferation of litigation in this district." *Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006), *aff'd in part, vacated in*

---

[7] Though debt forgiveness is not a remedy under the FDCPA, plaintiffs are eligible for up to $1,000 in statutory damages, on top of actual damages and attorneys' fees. 15 U.S.C. § 1692k(a). Plaintiffs also sometimes receive debt relief in settlements. *See, e.g., North Star Capital Acquisitions, LLC v. Krig*, No. 3:07-CV-264-J-32MCR, 2011 WL 65662, at *5 (M.D. Fla. Jan. 10, 2011) (approving FDCPA class settlement in which the settling class members "collectively received a significant amount of debt relief").

*part, rev'd in part*, 516 F.3d 85 (2d Cir. 2008). Since then, the number of FDCPA cases filed yearly in this District has more than quintupled.[8] And small wonder, when all required of a plaintiff is that he plausibly allege a collection notice is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). This standard prohibits not only abuse but also imprecise language, and it has turned FDCPA litigation into a glorified game of "gotcha," with a cottage industry of plaintiffs' lawyers filing suits over fantasy harms the statute was never intended to prevent. With *Avila*, the circuit's FDCPA jurisprudence lurches to ever more plaintiff-friendly terrain.

Consider again *Avila*'s core holding: Absent qualification for the safe harbor, a debt collector violates § 1692e if it notifies a consumer of his or her account balance but fails to disclose that the balance may increase due to interest and fees. *See Avila*, 817 F.3d at 76-77. In other words, under *Avila*, a communication that *accurately* conveys a consumer's account balance is "false, deceptive, or misleading," 15 U.S.C. § 1692e, if it does not also indicate that interest may subsequently accrue. Another court in this District recently observed of *Avila*, critically yet accurately, that the circuit court "effectively exchanged the words 'deceptive' and 'misleading' in the statute for 'ambiguous,'" holding, in effect, that a collection letter violates § 1692e if it is "ambiguous as to interest." *Islam v. Am. Recovery Serv., Inc.*, No. 17-cv-4228, 2017 WL 4990570, at *2 (E.D.N.Y. Oct. 31, 2017).[9] Statutory semantics aside, the Court questions the premise of the

---

[8] According to the ECF system, in 2006 there were 201 FDCPA cases filed in the Eastern District of New York. Over 800 such cases were filed in the District in each of 2015 and 2016. And as of this writing, over 1,000 FDCPA cases have been filed in 2017, with that number likely to exceed 1,100 before the year is out.

[9] Judge Cogan, in *Islam*, went on to persuasively make the case that the Second Circuit's § 1692e jurisprudence has departed, improvidently, from the principle of materiality. *See Islam*, No. 17-cv-4228, 2017 WL 4990570, at *2-4. This Court joins Judge Cogan in that opinion and notes that at least two other circuits, the Third and the Seventh, have held that "false, deceptive, or misleading" statements must be material to be actionable under § 1692e. *See Jensen v. Pressler*

holding: Can a letter be fairly described as "ambiguous" (or "deceptive" or "misleading") regarding interest if it says nothing about interest? The Court submits that the answer is no—that it makes as much sense to say the letter in *Avila* was ambiguous regarding interest as to say it was ambiguous regarding the date of the next presidential election or the existence of Bigfoot. If a collection letter simply states a debtor's account balance without mentioning interest or affirmatively indicating that the balance is static, then the letter is not "open to more than one reasonable interpretation" as to whether interest is accruing; such a letter admits of *no* reasonable interpretation regarding interest, as it provides no information from which a reasonable conclusion regarding interest can be drawn. Interest—particularly interest on debt—is a familiar enough concept that even the hypothetical least sophisticated consumer must be said to be aware of it. A debtor who assumes his account balance will never increase, simply because a collection letter provides no information regarding interest, does so unreasonably, and this irrationality should not be rewarded by courts at the expense of non-abusive debt collectors. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("The hypothetical least sophisticated consumer . . . is neither irrational nor a dolt. While protecting those consumers most susceptible to abusive debt collection practices, this Court has been careful not to conflate lack of sophistication with unreasonableness." (citation omitted)).

Calling to mind again the FDCPA's purpose, the Court finds itself unable to identify the debt-collection abuse *Avila* curbs or the consumer harm it prevents. *Avila* seems to assume dishonesty on the part of debt collectors, punishing them for imagined ambiguities in their letters

---

& *Pressler*, 791 F.3d 413, 420-21 (3d Cir. 2015); *Hahn v. Triumph P'ship LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). The Court also posits that the absence of materiality is what distinguishes the merely ambiguous from the misleading or deceptive. *See Jensen*, 791 F.3d at 421 ("A debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material.").

in the apparent expectation that they would seek abusively to capitalize on those ambiguities. But why would a debt collector wish to hide the fact that interest is accruing on a consumer's debt? Interest incentivizes prompt payment.[10] More importantly, the Court fails to discern what harm is averted by requiring debt collectors to disclose that interest may accrue on a debt.

Suppose a consumer—let's call her Mary—is "misled"[11] into thinking she can erase her debt by paying the amount listed as the account balance in a collection letter—only to find out, after payment, that she still owes money because interest accrued between the date of the collection letter and the date of payment. As Judge Cogan writes in *Islam*, Mary is, if anything, in better shape than she would have been had she not made the payment, since she has reduced the principal on which interest is accruing. *See Islam*, No. 17-cv-4228, 2017 WL 4990570, at *2-3. On the other hand, suppose another consumer, Tom, wrongly assumes that interest is not accruing on the debt listed in a collection letter and, on the basis of that assumption, chooses not to pay the debt. The "harm" in this scenario, if there is one, is the continued accrual of interest on Tom's account. But interest is the price one pays for not timely paying one's debts. If Tom thought the debt was invalid, then he could have disputed it using the debt validation procedure, outlined in § 1692g, of which the debt collector was required to inform him. *See* 15 U.S.C. § 1692g. But if, as in our hypothetical, Tom did not dispute the validity of the debt, then he should have paid it—whether

---

[10] Indeed, *Avila* itself recognizes that "debt collectors could use the threat of interest and fees to coerce consumers into paying their debts." *Avila*, 817 F.3d at 76.

[11] As discussed above, the Court does not believe it is reasonable for a consumer to draw any conclusions about interest from a collection letter that says nothing about interest. For this reason alone, courts should not concern themselves with the harms that may befall a consumer who, from a collection letter silent as to interest, draws a conclusion about interest. Nonetheless, for the sake of these hypotheticals, the Court assumes *arguendo* that a consumer could reasonably come to such a conclusion.

he knew interest was accruing or not. The FDCPA is not meant to insure consumers against the negative consequences of debt evasion.[12]

While the Court struggles to see how *Avila* protects consumers, little imagination is required to envision how the plaintiffs' bar will make use of it. During oral argument, plaintiff's counsel advised the Court that many cases have been filed as a result of the *Avila* decision. Tr. at 4:11-13. No doubt this is true. *See Islam*, No. 17-cv-4228, 2017 WL 4990570, at *1 (noting *Avila* "has led to a number of lawsuits in this district challenging the adequacy of disclosures concerning the accrual, or non-accrual, of post-default charges"). But are those cases serving to root out genuine instances of debt-collection abuse? Or are they, instead, serving largely to facilitate debt evasion and to prop profits among the plaintiffs' bar? With the FDCPA, Congress intended to "arm[] consumers with a shield against the overly zealous debt collector." *Russell*, 74 F.3d at 32. The Court worries that, by carrying the least-sophisticated-consumer standard and strict liability to an illogical extreme, this circuit has fashioned that shield into a sword.

Much as it laments the recent direction of FDCPA jurisprudence, the Court need not (and does not) ignore what it considers ill-conceived precedent to reach a just result in this case. For the reasons discussed above, PBCM qualifies for the safe harbor outlined in *Avila* and, therefore,

---

[12] The Tom hypothetical assumes he is capable of paying the debt. If he were not financially able to do so, then whether he knows interest is accruing would be immaterial. A third possibility also exists: Tom could be juggling multiple debts and capable of paying only some of them. In this in-between scenario, knowledge that interest is accruing on the debt in question is material only if it would have prompted Tom to pay it over another a debt that was accruing interest at a slower rate, and the "harm," such as there is one, would be the marginal interest that accrued on the debt in question as compared to the interest that would have accrued on the other debt in the but-for world. But the Court doubts that the consumers savvy enough to be comparing rates of interest accrual among different debts are also among those who would be so irrational as to conclude, from a collection letter's silence on the matter, that interest is not accruing on a debt. Even if they are, the purpose of the FDCPA was to prevent debt-collection abuse, not to require debt collectors to hand-feed debtors every bit of information they might consider relevant as they manage competing debts from different collectors.

is not subject to liability under § 1692e for failing to disclose in the Letter whether Kraus's account balance might increase due to interest or fees.

### B. Kraus's Other Allegations

Paragraphs 57 through 64 and paragraph 77 of the complaint contain additional allegations describing purported FDCPA violations. Specifically, in those paragraphs, Kraus alleges that PBCM contradicted her right to dispute the debt, caused her to dispute the debt without benefit of counsel, and caused the direct communication with a consumer represented by counsel, all in alleged violation of 15 U.S.C. §§ 1692g, 1692e, and 1692e(10). *See* Compl. ¶¶ 57-64, 77. Whether or not such conduct would constitute a violation of the FDCPA, these allegations are, as PBCM points out, entirely divorced from the content of the Letter, which contains none of the referenced communications. *See* ECF 9-2 at 4 n.3; Compl., Ex. 1. Rather, the allegations appear to have been drafted based on the Validation Notice, which was sent to Kraus almost two months before the Letter.[13] PBCM speculates that the allegations are the result of plaintiff's counsel "inappropriately rel[ying] on a form complaint and fail[ing] to tailor the allegations therein to the facts in this suit," ECF 9-2 at 4 n.3, a charge plaintiff's counsel did not dispute at oral argument. Alternatively, plaintiff's counsel may have tailored these allegations to the Validation Notice and then intentionally declined to reference or attach the Validation Notice because he recognized that, by the time the complaint was filed, any claim based on this earlier letter was barred by the one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). In any event, Kraus has failed to adequately plead any claim based on these allegations. And indeed, at oral argument, Kraus's counsel did not

---

[13] For example, Kraus alleges that PBCM "directed [her] to provide attorney information." Compl. ¶ 57. No such direction appears in the Letter, but it does appear in the Validation Notice. *See* ECF 9-1, Ex. A.

19

respond to PBCM's contention, from its brief, that these allegations are "baseless and unsupportable." ECF 9-2 at 4 n.3.

## CONCLUSION

For the foregoing reasons, PBCM's motion to dismiss is GRANTED.

SO ORDERED.

Dated:    Brooklyn, New York
          November 22, 2017

                                                /s/_____
                                                I. Leo Glasser